IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DORIAN JONES, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) CASE NO. |
| | ) |
| SCOTT BYRD; | ) |
| SHANE BRYAN; | ) |
| COREY PETIT; | ) |
| JEREMY BAILEY; and | ) |
| OLIVIA COUNTS, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff complains of defendants, stating as follows:

### Nature of the Action

1. This is a civil action brought by Dorian Jones against Coffee County Sheriff Scott Byrd; Byrd's jail administrator, Shane Bryan; and three corrections officers. The corrections officers violated plaintiff's constitutional right, guaranteed by the Fourth Amendment, not to be subjected to excessive force by beating and otherwise abusing Jones for no reason. The Jones beating and others like it were recorded on video. Videos of jail abuse were shared among jail officials, including Byrd and Bryan. Later, a whistleblower released the Jones' video and several other videos of abuse by Coffee County corrections officers to the publisher of a website,

who in turned released them to the public. The videos reflect a culture of violence among corrections officers at the jail, in which inmates are treated as sub-human. Because Byrd and Bryan were aware of and encouraged this culture, Byrd and Bryan are liable for the officers' excessive use of force.

## Jurisdiction and Venue

2. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

3. This judicial district is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the suit happened in this judicial district.

## Parties

4. Dorian Jones is of legal age and a citizen and resident of the state of Alabama.

5. Defendant Scott Byrd is the Coffee County Sheriff and was at all relevant times.

6. Defendant Shane Byrd was the administrator of the Coffee County Jail at all relevant times.

7. Defendants Corey Petit, Jeremy Baily, and Olivia Counts were

corrections officers at the Coffee County Jail at all relevant times.

8. All individual defendants are sued in their individual capacities only.

**Facts**

9. On or about November 18, 2024, Dorian Jones was arrested on a warrant and incarcerated in the Coffee County Jail.

10. Shortly before Jones was arrested, Jones broke both of his arms in an accident.

11. After being placed in jail, Jones' arms swelled to roughly twice their normal side.

12. Jones was taken to the hospital and both of his arms were put in casts. His right arm was placed in a sling for positioning.

13. Jones returned to the jail at around 4:00 p.m.

14. Jones was placed in a medical holding cell.

15. Jones could not be housed with other inmates because his broken arms left him defenseless.

16. Around 2:00 a.m., Jones was awakened by a disturbance involving a female inmate.

17. The woman was in a restraint chair and was screaming and crying hysterically.

18. The officers who brought her in, Petit, Bailey, and Counts, antagonized and threatened her, particularly defendant Counts.

19. After the officers walked away, Jones quietly told the female inmate to pray.

20. Jones did not protest how the officers were treating the woman or otherwise antagonize the officers.

21. Nevertheless, Petit approached Jones' cell and told Jones he could join the woman in a restraint chair.

22. Petit walked away and spoke to Bailey and Counts.

23. The three agreed that they would beat Jones and place him in a restraint chair.

24. Petit and Bailey then entered Jones' cell and started beating him while Counts went to get the chair. They hit Jones in the face and elsewhere, kneeled on his neck, and choked him.

25. Jones, with two broken arms, just covered up and tried to protect himself.

26. The officers made no demands, and Jones did not refuse any command.

27. If the officers had ordered Jones to get in the restraint chair, even though it was unjustified, Jones would have gotten into the chair.

28. After retrieving the restraint chair, Counts briefly watched Petit and

Bailey beat Jones before joining in.

29. The officers eventually threw Jones in the restraint chair and roughly strapped him down, excessively tightening the straps on Jones' broken arms to cause Jones unnecessary suffering.

30. There was no reason to beat Jones or place him in a restraint chair or tighten the straps excessively.

31. Jones was not removed from the restraint chair until roughly 4 hours later when the next shift came on.

32. Jones was not permitted to use the bathroom.

33. Jones was forced to lay in his own excrement.

34. Periodically, one of the three officers would come by and crank down the straps to make sure the straps remained as tight (and painful) as possible.

35. The restraint chair policy at the jail, approved by defendants Byrd and Bryan, explicitly permitted the chair to be used for punishment and without breaks for as much as 4 hours at a time.

36. After being released, Jones went to the hospital on his own, where he was diagnosed with an orbital fracture.

37. Roughly a week later, Jones' parents contacted the sheriff's office and complained about the abuse of their son, including his orbital fracture, and requested

to see the jail video.

38. The complaint was passed on to Byrd and Bryan.

39. Byrd and Bryan already knew about the beating because they were routinely informed of such incidents at the jail and routinely reviewed videos of corrections officers abusing inmates.

40. Over the years, Byrd and Bryan were aware of and viewed the videos of numerous other excessive force incidents.

41. Byrd and Bryan, however, believed such violence was appropriate and necessary and refused to discipline officers who abused inmates.

42. Byrd and Bryan were also aware of the pattern of abuse from reviewing jail logs, incident reports, grievances filed by inmates, verbal reports by officers, complaints by inmate family members, and from other sources.

43. The abuse of Jones at the jail was part of a pattern and considered acceptable by Byrd and Bryan.

44. Byrd and Bryan endorsed the use of excessive force on inmates, claiming criminals in jail have to be handled with force.

45. Despite the gross abuses shown on the videos, Byrd and Bryan did not discipline, let alone terminate, any corrections officer.

46. Despite the gross abuses shown on the videos, Byrd and Bryan did not

refer any officer for criminal charges.

47. Even after the videos were released to the public, Byrd and Bryan refused to take any action against the corrections officers in the videos.

48. These corrections officer continue to work at the Coffee County Jail.

### Count I - 42 U.S.C. § 1983 - Excessive Force - Beating

49. As explained above, the identified individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, assaulted and battered Jones without justification or failed to intervene despite an opportunity to do so. These individual defendants did thereby deprive Jones of his rights under the Fourth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983. Specifically, they violated Jones's right to be free from excessive force.

50. Byrd and Bryan are liable because they established a custom or policy that was the moving force behind the constitutional violation.

51. As a result of the conduct of defendants, Jones suffered physical and emotional injuries and damages.

### Count II - 42 U.S.C. § 1983 - Excessive Force - Restraint Chair

52. As explained above, the identified individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, without justification, restrained Jones in a chair with excessively tight straps on his broken arms for roughly 4 hours

or failed to intervene despite an opportunity to do so. These individual defendants did thereby deprive Jones of his rights under the Fourth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983. Specifically, they violated Jones's right to be free from excessive force.

53. Byrd and Bryan are liable because they authorized the constitutional violation (via policy) and because they established a custom or policy that was the moving force behind the constitutional violation.

54. As a result of the conduct of defendants, Jones suffered physical and emotional injuries and damages.

## Other Matters

55. All conditions precedent to the bringing of this suit have occurred.

## Relief Sought

56. As relief, plaintiff seeks the following:

    a. That plaintiff be awarded such compensatory damages as a jury shall determine from the evidence plaintiff is entitled to recover;

    b. That plaintiff be awarded against the individual defendants such punitive damages as a jury shall determine from the evidence plaintiff is entitled to recover;

    c. That plaintiff be awarded prejudgment and postjudgment interest at the highest rates allowed by law;

    d. That plaintiff be awarded the costs of this action, reasonable attorney's fees, and reasonable expert witness fees;

    e.    That plaintiff be awarded appropriate declaratory and injunctive relief; and

    f.    That plaintiff be awarded such other and further relief to which plaintiff is justly entitled.

**Dated: December 8, 2025.**

Respectfully submitted,

s/ Henry F. (Hank) Sherrod III
Henry F. (Hank) Sherrod III
No. ASB-1200-D63H
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, Alabama 35630
Phone: 256-764-4141
Fax: 877-684-0802
Email: hank@alcivilrights.com

Attorney for Plaintiff

**Jury Demand**

Plaintiff requests a trial by jury.

s/ Henry F. (Hank) Sherrod III
Henry F. (Hank) Sherrod III